E. COREY COMPANY, Pet'r,

*vs.*

H. P. CUMMINGS CONSTRUCTION Co., et als.

Oxford.    Opinion January 28, 1919.

*Chap. 96, Secs. 29-30 interpreted.    Meaning and scope of the word "consent" as used
in the lien Statute.    What interest may be included in the word "owner".
General rules applicable to establish the fact of knowledge on part of
the owner where lien is claimed for labor and materials.*

The owner of a building site leased it, providing in the lease that the building to be erected thereon by the lessee should remain and be personalty and not become a part of the realty, and that the lessee, its successors or assigns, might enter and remove the same from said premises at the expiration of the lease. The lessee erected a mill upon the leased premises and later, with the knowledge and consent of the lessor, contracted for the erection of an addition thereto. Upon proceedings to enforce a lien in behalf of a material man who furnished materials, which entered into the addition, to a subcontractor under the general contractor for the entire work:

*Held:*

That a lien upon the interest of the lessor in the leased premises cannot be sustained.

While the lessee observed all the terms and conditions of the lease, the lessor could not prevent the erection of the addition, and therefore could not be said to have given or withheld his consent, although the general contract for erecting the building was made with the actual knowledge and consent of the lessor. In such a case, consent amounts only to acquiescence in that which the lessor could not prevent.

Nor can a lien be sustained in behalf of such material man, upon the interest of the lessee who had no actual knowledge that the lien claimant who dealt with a subcontractor under the general contractor, was furnishing materials for the building.

Revised Statutes, Chap. 96, Sec. 30, pre-supposes that the owner has knowledge of the furnishing of materials; without such knowledge, he cannot protect his property by giving the notice mentioned in that section; nor in strictness can the owner be said to consent to that, of which he has no knowledge.

So, when a sub-contractor under the general contractor makes a contract with another for materials intended to be used, and which are actually used in the construction, of which contract the owner has no knowledge, the owner's consent to the furnishing of such materials should not be inferred in favor of the material man so dealing with the sub-contractor, against the established fact that the necessary knowledge of the owner on which to base such consent, and the necessary opportunity to consent or to object do not exist.

Bill in equity to enforce a lien under Revised Statutes, Chap. 96, Secs. 29-30. Cause was heard upon bill, answer, replication and agreed statement, and by agreement case was reported to Law Court for final determination. Judgment in accordance with opinion.

Case stated in opinion.

*Clement F. Robinson, and Arthur L. Robinson,* for petitioner.

*George F. Gould,* for Fletcher & Crowell Company and Carroll B. Skillin, Trustee in Bankruptcy.

*Drummond & Drummond,* for Maine Coated Paper Company and Rumford Falls Power Company.

*William H. Gulliver,* for H. P. Cummings Construction Company.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

MORRILL, J. The plaintiff claims to establish a lien on the land of Rumford Falls Power Company and the buildings thereon occupied by Maine Coated Paper Company, for materials used in the construction of an addition to the mill of the latter corporation, furnished to Fletcher & Crowell Company, a sub-contractor under H. P.

Cummings Construction Company, the general contractor for the entire work. The case is reported upon a stipulation and agreed statement of facts.

On the eighth day of August, 1913, Rumford Falls Power Company leased to Maine Coated Paper Company the land described in the bill for a term of twenty-five years from the first day of August, 1913, with an option to purchase the same, which has not been exercised by the lessee.

Later, (the exact date does not appear), Maine Coated Paper Company erected a mill on the leased premises, and on the twenty-seventh day of April, 1916, made a contract with H. P. Cummings Construction Company to "do and perform all the work and provide all the materials required" in building an addition adjoining and attaching to the present building of the Maine Coated Paper Company. This contract was made "with the actual knowledge and consent of the Rumford Falls Power Company."

By correspondence between April 24, 1916, and June 7, 1916, both inclusive, H. P. Cummings Construction Company made a contract or contracts with Fletcher & Crowell Company to furnish certain portions of the iron and steel materials for installation in said building under construction.

By correspondence and personal interviews between May 9, 1916, and June 7, 1916, both inclusive, Fletcher & Crowell Company, with the actual knowledge and consent of H. P. Cummings Construction Company, contracted with E. Corey & Company for certain of the materials which, as E. Corey & Company knew, were for the building then in process of construction at Rumford under the contract between H. P. Cummings Construction Company and Maine Coated Paper Company. The material so contracted for was actually furnished and delivered by E. Corey & Company at the forge shop in Portland, of Fletcher & Crowell Company between May 29, 1916, and June 22, 1916, both inclusive, as H. P. Cummings Construction Company at the time actually knew; the agreed price therefor was $1654.05; all of the material so delivered by E. Corey & Company at the forge shop of Fletcher & Crowell Company was delivered and received for the purpose of being shipped to Rumford for incorporation into the building there under construction as aforesaid, "after the material should have been painted, put together, drilled with holes,

bolted, welded or otherwise worked into the shape and condition necessary for meeting the requirements of the building contract in so far as the materials in the shape in which they were supplied by E. Corey & Company were not already in such necessary shape and condition;" but E. Corey & Company had no control whatever over the disposition of said material after it was delivered to Fletcher & Crowell Company.

Certain portions of the material supplied by E. Corey & Company and delivered to Fletcher & Crowell Company, at their shop, in Portland, were actually incorporated and used in erecting, constructing, altering and repairing the building and appurtenances then being erected on the leased premises by H. P. Cummings Construction Company under its contract with Maine Coated Paper Company, after having been, as hereinbefore stated, painted, welded, bolted, drilled with holes and otherwise worked into the shape and condition necessary for meeting the requirements of the building contract of H. P. Cummings Construction Company; the value of such material at the original contract prices between Fletcher & Crowell Company and E. Corey & Company was $1530.90.

The Rumford Falls Power Company had no actual knowledge that Fletcher & Crowell Company were furnishing materials in the erection of said building for Maine Coated Paper Company, but knew that a contract had been entered into between Maine Coated Paper Company and H. P. Cummings Construction Company, and that said building was being erected and the materials required by the contract for its erection were being furnished and installed.

The claim of a lien upon the interest of Rumford Falls Power Company in the leased premises cannot be sustained. The lease contained an express provision that the building "shall remain and be personalty and not become a part of the realty, and that the said lessee, its successors or assigns, may enter and remove the same from said premises at the expiration of this lease." The lessor did not participate in the improvement; nor was it to reap any ultimate benefit therefrom; it was not an affirmative factor in procuring the erection of the addition to the then existing mill. As long as the Maine Coated Paper Company observed the conditions and terms of the lease, and particularly the condition that it should "never occupy or use said premises, or any part thereof, for any purpose other than

those in which it is authorized under its certificate of organization to engage," the lessor could not prevent the erection of the addition, and therefore cannot be said to have given or withheld its consent; and its interest cannot be charged with the lien claimed by plaintiff, (2 Jones on Liens, Secs. 1275, 1276; *Francis* v. *Sayles,* 101 Mass., 435; *Rice* v. *Culver,* 172 N. Y., 60, 65) although, as the case states, the general contract for erecting the building was made with the actual knowledge and consent of the lessor. In such a case, consent amounts only to acquiescense in that which the lessor could not prevent. "Consent within the meaning of the statute means something more than acquiescense. It implies an agreement to that which could not exist without such consent." 2 Jones on Liens, Sec. 1253; *Hanson* v. *News Publishing Co.,* 97 Maine, 99, 103; *De Klyn* v. *Gould,* 165 N. Y., 282, 80 Am. St. Rep., 719.

This case is clearly distinguishable from cases like *Baker* v. *Waldron,* 92 Maine, 17; *Borden* v. *Mercer,* 163 Mass., 7; *Burkett* v. *Harper,* 79 N. Y., 273; *Otis* v. *Dodd,* 90 N. Y., 236.

We pass also without discussion, and without expressing any opinion thereon, the point which has been exhaustively argued, whether the materials were furnished by E. Corey & Company *in erecting, altering or repairing the building.* See *Munroe* v. *Clark,* 107 Maine, 134; *Boston Furnace Co.* v. *Dimock,* 158 Mass., 552; *Scannell* v. *Hub Brewing Co.,* 178 Mass., 288.

It is incumbent upon the plaintiff to show that the materials for which he would establish a lien were furnished "by virtue of a contract with or by consent of the owner." The word "owner" is comprehensive enough to include the owner of a leasehold estate. 2 Jones on Liens, Sec. 1272.

It is not claimed that the plaintiff had a contract with Maine Coated Paper Company; its contract was with Fletcher & Crowell Company, a sub-contractor under the general contractor for the entire work, H. P. Cummings Construction Company. It is agreed that "Maine Coated Paper Company had no actual knowledge that Fletcher & Crowell Company were furnishing the materials which were furnished by Fletcher & Crowell Company for the building, nor did it have actual knowledge that E. Corey & Company furnished these materials to Fletcher & Crowell Company."

The single question then is:  Can the consent of Maine Coated Paper Company to the furnishing of these materials by E. Corey & Company, be inferred under the circumstances of this case?  We think not.

Secs. 29 and 30 of Chap. 96 of the Revised Statutes, upon the construction of which the decision of this case depends, originated in Chap. 207 of the Public Laws of 1868; Secs. 2 and 3 of the latter act were condensed, in the revision of 1871, into the following language: "If the labor or materials were not furnished by a contract with the owner of the property to be affected, such lien shall not attach unless the person before furnishing the labor or materials gives notice to such owner of his intention to claim the lien.  The owner may prevent such lien for labor or materials not then performed or furnished, by giving written notice to the person performing or furnishing the same, that he will not be responsible therefore."  This section was amended by Chap. 140 of the Public Laws of 1876, by striking out the provision for a notice by the laborer or material man, leaving the section in substantially the form in which it now appears:  "If the labor or materials were not furnished by a contract with the owner of the property affected, the owner may prevent such lien for labor or materials not then performed or furnished by given written notice to the person performing or furnishing the same, that he will not be responsible therefor."

It is clear that this section in its present form pre-supposes that the owner has knowledge of the furnishing of the materials; without such knowledge, he cannot protect his property by giving the notice mentioned in this section.  Nor in strictness can the owner be said to consent to that, of which he has no knowledge.  And so in *Morse v. Dole*, 73 Maine, 351, on page 354, decided in 1882, the court, in discussing the claim for priority of a lien over a mortgage, said:  "At least the knowledge of the mortgagee must in some way appear, before the written notice mentioned in R. S., Chap. 91, Sec. 28 (R. S., 1916, Chap. 96, Sec. 30) can be required from him in order to prevent a later claim from taking precedence of the mortgage."

But in several cases, decided since the amendment of 1876, this court has held that the consent of the owner sufficiently appeared, although it did not affirmatively appear that he had actual knowledge that the lien claimant in the particular case was furnishing materials.

In *Norton* v. *Clark*, 85 Maine, 357, (1893) the court permitted the contract between the owner and the general contractor for the entire work to be put in evidence, saying: "The fact that such a contract was made, clearly tends to prove that the owner consented to the furnishing of labor and materials by others at Clark's procuration. He could not reasonably have expected Clark to personally perform all the labor, and have on hand all the materials. He must have anticipated that Clark would procure much of the labor and materials from others. Hence, his consent thereto may be reasonably inferred from his making such a contract."

In *Shaw* v. *Young*, 87 Maine, 271, (1895) the consent of the owner for preservative repairs was inferred, but the decision was limited to the facts of that particular case; and in this connection, see *Harkinson* v. *Vantine*, 152 N. Y., 20.

In *Baker* v. *Waldron*, 92 Maine, 17, 22, (1898) the land owner had made an agreement to sell a parcel of land on condition that the purchaser should build a dam and erect a mill, and the court said: "But the owner's consent that the mill might be erected on his land is a consent that a lien for materials and services procured for erecting the same may be established on his land."

*York* v. *Mathis*, 103 Maine, 73, (1907) was a case of lessor and lessee, and a lien was established against the owner of the buildings upon the ground that the conduct of the owner justified the expectation and belief that he had consented to the making of the repairs, and attention was called to the fact that a portion, at least, of the improvements were a permanent addition to the building and were of no value for removal.

In *Central Trust Company* v. *Bodwell Water Power Company*, 181 Fed. Rep., 735, affirmed 190 Fed. Rep., 700, the Circuit Judge considering these cases, says: "A fair construction of the statute and of the decisions of the Supreme Judicial Court of Maine in reference thereto, must come back to something of that nature, that is, to the proposition that, in order that the interest in real estate of any person shall be affected by reason of his statutory consent, he must be held to have set in motion a train of circumstances which necessarily or reasonably, or ordinarily resulted in the furnishing of labor and supplies for which a lien is claimed."

We think that the decision in each of these cases must be regarded as based upon and limited by the facts of the particular case; and the

language quoted from *Central Trust Company* v. *Bodwell Water Power Company* should be limited to these cases, and not regarded as a general rule.    It may well be that when the owner enters into a general contract for the entire work, he may be held to contemplate that the general contractor will sub-contract certain portions of the work, and so be held to give his consent to such sub-contracts for labor and materials; also, an owner by his conduct in the particular case may be held, in the absence of notice under Sec. 30, to have given consent, as in *Shaw* v. *Young* and *York* v. *Mathis*.    In all these cases the owner has placed himself where his consent may be inferred; he has such knowledge of the facts as will enable him to give notice under Sec. 30; and he must be vigilant to give his notice of dissent.

But when a sub-contractor under the general contractor makes a contract with another for materials intended to be used, and which are actually used in the construction, of which contract the owner has no knowledge however vigilant he may be, we think the owner's consent to the furnishing of such materials should not be inferred in favor of the material man so dealing with the sub-contractor, against the established fact that the necessary knowledge of the owner on which to base such consent, and the necessary opportunity to consent or to object do not exist.

In the case before us the owner had no knowledge that Fletcher & Crowell Company were furnishing the materials which were furnished by that corporation for the building; nor did the owner have knowledge that E. Corey & Company furnished those materials to Fletcher & Crowell Company; the owner, therefore, could not give the notice provided by Sec. 30.

Upon these facts, Maine Coated Paper Company cannot be held to have consented to the furnishing of materials for the building, by E. Corey & Company, of which transaction it did not have knowledge; the bill must be dismissed in accordance with the stipulation.    The Rumford Falls Power Company was not represented at the argument in the Law Court; accordingly it will recover costs taxed to the date of report, April 29th 1918.    As to the other defendants, the controversy relates to a fund in which they are all interested, and we think that costs should not be allowed.

> *Bill dismissed with costs to Rumford Falls Power Company only to date of report.*