Bangor Roofing & Sheet Metal Co.
*vs.*
Robbins Plumbing Co., Inc., T. W. Cunningham, Inc., Harold Colby, Receiver, Old Town High School District, and Building

Case No. 2011
\* \* \* \* \* \* \*

T. W. Cunningham, Inc., Harold Colby, Receiver, Old Town High School District, and Building

Case No. 2012

Penobscot.    Opinion, August 16, 1955.

*May and May,*
*Goodspeed & Goodspeed,* for plaintiffs.

*Pilot & Pilot,* for defendant.

SITTING: WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. FELLOWS, C. J., did not sit. MR. JUSTICE TIRRELL sat on the case and participated in conferences but died before the opinion was submitted to him.

WEBBER, J. These two cases, which for convenience will be referred to by number, arise out of bills in equity brought under the provisions of the Mechanics' Lien Law, now R. S., 1954, Chap. 178, Sec. 34, *et seq.* The plaintiff is the same in both cases. Plaintiff furnished labor and material which went into the erection of a new school building. In case No. 2011 plaintiff acted as a sub-subcontractor and in case No. 2012 as a subcontractor. In case No. 2011 plaintiff attached to its bill in equity an account annexed (Exhibit "A") in which appeared a detailed list of material and labor furnished, priced item by item. These items, totaled at $4470.02, were followed by three others, viz:

```
"12½%   Tax & ins.         $  193.19
 15%    Overhead             670 50
 10%    Profit               447 00
                            ─────────
                          .  5780.71"
```

In case No. 2012, Exhibit "A" set up only "Contract Price — $13,350.00" less certain credits. By amendment further credits were admitted leaving a claimed balance of $6790.00. There was admitted in evidence, however, a breakdown sheet which in similar fashion itemized labor and materials and then included as separate items:

```
"Insurance  10% of labor    $  501.98
 Overhead   15%               1916 42
 Profit     10%               1277 61"
```

It is not disputed that the itemized list of labor and materials represents the plaintiff's actual cost for those items. The justice below disallowed as non-lienable all of the listed items for taxes, insurance, overhead and profit, and in addition in case No. 2011 disallowed an item: "Transportation —$78.00."

The first issue therefore involves a determination as to the measure of the protection afforded by the lien security. We cannot discover that this question has ever been directly answered by this court.

At the outset, we have no hesitation in saying that such items as profit, overhead, taxes, insurance, and even transportation, *as such and standing by themselves,* are non-lienable. Our statute *(supra)* provides in part: "Whoever performs labor or furnishes labor or materials * * * in erecting * * * any public building * * * by virtue of a contract with or by consent of the owner, has a lien thereon and on the land on which it stands * * * to secure payment thereof, with costs." Obviously such items as these are neither labor nor materials. But it does not follow that they can be completely and summarily disregarded in assessing the whole evidence as to just what the plaintiff has furnished.

We think that there is a clear indication in the previous decisions and language of this court as to the way in which this issue must be resolved. The lien is dependent upon the existence of contract, express or implied, and the obligation of debt. The lien is incident and security to a legal liability to pay. *Cole* v. *Clark*, 85 Me. 336. There may be an express contract creating the obligation of the owner as is usual between him and his prime contractor. Or there may be an implied contract as when labor and materials are furnished with the knowledge and consent of the owner and under such circumstances as would raise a legal and moral duty to pay on the grounds of justice. When applied to the lien law, the implied contract is not essentially to pay the subcontractor under all circumstances, but rather to subject the owner's property to a lien security for such payment. The corner stone of the Mechanics' Lien Law is the prevention of unconscionable and unjust enrichment. "A lien is given upon the ground that the work has been a benefit to the realty, and has enhanced its value." *Hanson* v. *News Pub. Co.*, 97 Me. 99 at 102; *Fletcher, Crowell Co.* v. *Chevalier*, 108 Me. 435. When, therefore the statute *(supra)* speaks of securing "payment thereof," it refers to the debt created by the acts of the parties. When by express contract the parties fix the compensation to be paid for full and complete performance of the contract, they have themselves established the debt to be secured by lien. In a sense they have by binding agreement determined the extent to which the owner's property will be enhanced by the labor and materials to be incorporated in the realty, and to that extent the contractor is protected by lien. When, as here, the owner is not party to the contract, the determination must be as to what is the fair and reasonable value of the labor and materials in place. In what amount has the property been enhanced by the labor and materials furnished? Where, as here, the subcontractor has a fixed price contract with another contractor who stands between him and the owner,

we think the price agreed upon represents a ceiling upon this fair and reasonable value, and it would be inequitable to permit a lien in excess of the subcontract price. But where the fair and reasonable value appears to be less than the subcontract price, the latter must yield to the former in submission to the test as to the extent the property has been enhanced. A subcontractor then cannot assume that he has a lien for the amount of his subcontract in all cases, but he may rely upon the lien security to protect the payment contracted for provided the fair value of what he furnishes at least equals that amount. With specific relation to profits, we think the applicable rule is fairly stated in 57 C. J. S. 540, Sec. 49: "Profits and commissions ordinarily are not lienable items unless included in the contract price or in the reasonable worth of the labor or materials furnished; no lien may be allowed for profits or commissions not earned." See also 36 Am. Jur. 110, Sec. 164. Just as the subcontractor may not always or necessarily have a lien for the full amount of his subcontract price, so also he is not limited to his actual costs. Business is operated for a profit. When a business man's costs are not excessive, the fair value of what he sells, delivered and in place, will ordinarily exceed his own costs. Otherwise business concerns could not long exist. Fair and reasonable value must be tested in the light of the probable cost to the owner in a free and open market. What would others, who presumably would likewise be in business to make a reasonable profit, charge for the same labor and materials incorporated into the owner's realty in the same manner? We think that this was the concept in the mind of our own court when in *Andrew* v. *Bishop et al.*, 132 Me. 447 at 455, it used such phrases as "the object of the statute of liens upon buildings * * * admittedly is, to afford to the materialman every reasonable aid to secure fair and full payment for the materials sold by him and used in the construction of the building," and "But when *only fair and full value* of the materials entering into the struc-

ture makes up the amount for which the lien is found, the owner cannot be held to be a sufferer." (Emphasis supplied.) See also *Laughlin* v. *Reed*, 89 Me. 226, 230.

It is apparent that the learned justice below deemed that he was limited by law to the allowance of no more than plaintiff's actual costs, regardless of the relationship between those costs and the fair and reasonable value of the labor and materials. He made no finding as to fair and reasonable value, although evidence was presented which, if believed, would have supported a finding of value in excess of those actual costs. The determination is primarily one of fact, and one which in such a case as this can best be made at the level where the witnesses are seen and heard. Such a determination can now be made in the light of the applicable law as here announced.

Still another factor arises in case No. 2012 in which plaintiff was subcontractor. The evidence indicates that the prime contractor submitted to the owner a list of his subcontractors and their bids, and that plaintiff and its bid were included. The owner reserved the right to approve or reject the proposed subcontractors and their bids. The owner, tacitly at least, accepted and approved plaintiff's bid as representing the fair value of the labor and materials to be incorporated into its property, and this before plaintiff had begun work. In such a case we think that if the contract be fully and properly performed, the owner is estopped to assert that the fair value is less than the sum approved and agreed upon. The situation is not dissimilar to that which arises upon an express contract between owner and contractor fully performed.

We regard the item for transportation as in the same category as the items above discussed. In and of itself, it is non-lienable. If materials in place at the construction site have in fact a greater value because they have been transported there, the lien will reflect the enhanced value of the

material. Otherwise, transportation is not a factor to be considered.

Cases cited to us which construe lien laws other than the Mechanics' Lien Law are not applicable to or decisive of the issues here. Defendants cite no case holding that actual costs are the measure of lien rather than fair and reasonable value.

The owner is not without protection. He may give the notice provided by R. S., 1954, Chap. 178, Sec. 35. He may insist upon a performance bond. He may control the payments to the prime contractor, or insist upon direct payments made by himself to the subcontractors. In the absence of any of these precautions, he cannot accept the enhancement of his property without submitting it to the lien security afforded by the statute.

The second issue which remains is whether or not the owner consented within the meaning of the lien statute to the furnishing of labor and materials by the plaintiff. In its prime contract the owner consented that others were expected to be employed as subcontractors and material men. The owner was thereby put upon notice. *Norton* v. *Clark,* 85 Me. 357; *White Co.* v. *Griffith,* 127 Me. 516. Consent may be inferred from circumstances. *Shaw* v. *Young,* 87 Me. 271; *Corey & Co.* v. *Cummings Const. Co.,* 118 Me. 34. The evidence discloses ample circumstances to support the finding of the justice below that the owner knew of and consented to the work being done by plaintiff.

For the reasons stated in the discussion of the first issue, the entry in each case must be,

*Plaintiff's appeal sustained with costs to plaintiff. Case remanded for further proceedings in accordance with this opinion.*