STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
Cumberland ss. Clerk's Office

MAR 25 2015

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-472

R. BRUCE MONTGOMERY, et al.,

      Plaintiffs

      v.

EATON PEABODY, LLP, et al.,

      Defendants

ORDER ON MOTION
FOR SUMMARY
JUDGMENT

Before the court is defendant Clifford Goodall's motion for summary judgment. In a separate order, the court has denied plaintiffs' motion to amend the complaint. This order addresses the motion for summary judgment on count 7 of the second amended complaint, which is the operative pleading. For the following reasons, the motion is granted.

<u>Summary Judgment Filings</u>

The parties' summary judgment filings in this case "are the kind of submissions that give summary judgment a bad name." *Thomsen v. Chaney*, 2013 WL 6143127, at *1 (Me. Super. Oct. 25, 2013). Defendant submitted 80 paragraphs of facts to which plaintiffs responded with 180 additional paragraphs of their own facts. In response, defendant has objected to virtually every single one of plaintiffs' 180 additional facts. These bloated filings, filled with largely irrelevant material do not meet Rule 56's requirement of a "separate, short, and concise statement" of facts.

Plaintiffs are primarily to blame for the faulty filings. Not only have they filed an incredible number of facts, but they have also failed to comply with Rule

56's requirements regarding affidavits and proper record citations. M.R. Civ. P. 56(e), (h)(4). The court will disregard the majority of plaintiffs' additional facts and deem the majority of defendant's supporting facts admitted. In the interests of brevity and clarity, the court's facts section does not discuss the court's determination with respect to every challenged fact. If the court discusses the fact, it determined that the fact was admitted for the purposes of summary judgment, except as otherwise noted.

### Facts

The following facts are presented in a light most favorable to plaintiffs as the non-moving party. In 1960, plaintiff Bruce Montgomery's parents, Claude and Louise Montgomery, purchased seven shorefront lots in Georgetown, Maine. (Def.'s Supp. S.M.F. ¶ 1.) The lots were numbered 37-43 as depicted on a 1935 subdivision plan recorded in the Sagadahoc County Registry of Deeds. (Def.'s Supp. S.M.F. ¶ 3.)

In 1974, the Town of Georgetown first adopted a Shoreland Zoning Ordinance ("1974 SZO"), which applied to property located within 250 feet of the water, including the Montgomery lots.[1] (Def.'s Supp. S.M.F. ¶ 4.) At the time the ordinance was passed, a single-family residence was located on lots 37-39, while

---

1 Plaintiffs qualify many facts by stating that "[t]he complaint in this matter was drafted by the Defendant." (*See, e.g.,* Pls.' Opp. S.M.F. ¶ 4.) In almost all instances, this purported qualification does not respond to the alleged fact. Even if defendant Goodall drafted the complaint, plaintiffs' current attorneys signed and filed the complaint and are therefore responsible for its contents. *See* M.R. Civ. P. 11(a) ("The signature of an attorney or party constitutes a representation by the signer that the signer has read the pleading or motion; that to the best of the signer's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."). Plaintiffs' qualifications are invalid and will be disregarded by the court.

a studio was located on lots 40-43.[2] (Def.'s Supp. S.M.F. ¶ 6.) The residence became a "grandfathered" non-conforming structure because it did not meet the setback requirements in the 1974 SZO. (Def.'s Supp. S.M.F. ¶ 7.)

In addition to setback requirements, the 1974 SZO required lots for each principal structure to contain at least 20,000 square feet. (Def.'s Supp. S.M.F. ¶¶ 9-10.) Lots 37-40 on the subdivision plan were all adjoining lots in common ownership at the time the SZO was passed. (Def.'s Supp. S.M.F. ¶ 13.) In 1975, Claude and Louise Montgomery conveyed lots 37 and 38 to Louise Montgomery. (Def.'s Supp. S.M.F. ¶ 14.) At the time, lots 37 and 38 combined were approximately 0.3 acres, which is less than 20,000 square feet.[3] (Def.'s Supp. S.M.F. ¶ 26.)

In 1981, Louise Montgomery conveyed her interest in lots 39-43 to Claude Montgomery. (Def.'s Supp. S.M.F. ¶ 16.) This division of property was not the result of a divorce. (Def.'s Supp. S.M.F. ¶ 17.) In 1991, the Personal Representative of the Estate of Claude Montgomery conveyed lots 39-43 to Louise Montgomery for life, with a contingent remainder in Susan Libby, plaintiff Bruce Montgomery's sister. (Def.'s Supp. S.M.F. ¶ 18.) In 1993, the Personal Representative of the Estate of Louise Montgomery conveyed lots 37 and 38 to Nancy Beebe, who is also plaintiff Bruce Montgomery's sister. (Def.'s Supp. S.M.F. ¶ 19.) On May 21, 1999, Susan Libby conveyed to Nancy Beebe approximately 0.2 acres from land previously conveyed to Susan Libby by Claude Montgomery. (Def.'s Supp. S.M.F. ¶ 20.) On June 10, 1999 Nancy Beebe

2 Defendant's original record citation supporting this fact contained a typo, but defendant corrected the typo in his reply statement of facts.
3 One acre equals 43,560 square feet. *Barnard v. Zoning Bd. of Appeals of Town of Yarmouth*, 313 A.2d 741, 746 n.5 (Me. 1974). 43,560 x 0.3 = 13,068 square feet.

conveyed to Bruce Montgomery and Wanda Haddock lots 37 and 38 plus the 0.2 acres previously conveyed from Susan Libby. (Def.'s Supp. S.M.F. ¶ 21.)

In 2004, plaintiffs were granted a building permit by the Georgetown Planning Board to construct an accessory structure on their property. (Def.'s Supp. S.M.F. ¶ 36.) After construction was already underway on the structure, the Code Enforcement Officer for the Town determined that the structure was not being built in conformance with the permit and issued plaintiffs a stop work order on December 22, 2004. (Def.'s Supp. S.M.F. ¶ 37.) The structure was larger than the proposed structure set forth in the application for the building permit and was built in a different location, which violated the applicable 20-foot setback requirement. (Def.'s Supp. S.M.F. ¶ 39.) In addition, although the structure had internal plumbing, plaintiffs never obtained a plumbing permit from the Town. (Def.'s Supp. S.M.F. ¶ 42.)

The Planning Board revoked the 2004 permit for the accessory structure and plaintiffs appealed to the Board of Appeals on September 4, 2005. (Def.'s Supp. S.M.F. ¶ 43.) The Board of Appeals remanded back to the Planning Board, which reaffirmed the revocation. (Def.'s Supp. S.M.F. ¶ 44.) Following the revocation, the Town brought an enforcement action against plaintiffs under M.R. Civ. P. 80K for a violation of the Shoreland Zoning Ordinance. (Def.'s Supp. S.M.F. ¶ 45.) Plaintiffs' neighbors also filed an action against plaintiffs over the location of the boundary line between their properties, which was consolidated with the 80K action. (Def.'s Supp. S.M.F. ¶¶ 46-47.) The Superior Court eventually required plaintiffs to file an appropriate permit request or application to alter or move the structure previously determined to be in violation of the setback requirement. (Def.'s Supp. S.M.F. ¶ 50); *Karbiner, et al. v. Montgomery, et*

4

*al.*, BATSC-RE-2006-03 consolidated with *Town of Georgetown v. Montgomery, et al.*, WESDC-CV-05-289 (Me. Super. Ct., Sag. Cnty., Sept. 23, 2008).

On September 19, 2008, Wanda Haddock filed an application for a building permit with the Town of Georgetown. (Def.'s Supp. S.M.F. ¶ 52.) On October 15, 2008, the Planning Board voted to deny the permit because the lot was not a grandfathered, non-conforming lot. (Def.'s Supp. S.M.F. ¶ 58.)

The plaintiffs first met with defendant Goodall after they received the adverse decision from the Planning Board. (Def.'s Supp. S.M.F. ¶ 60.) Goodall applied for a permit to expand the plaintiffs' principal residence, which included a plan to connect the constructed garage to the home on January 26, 2010. (Def.'s Supp. S.M.F. ¶ 64.) The Planning Board denied the application based on the 2009 Board of Appeals' decision. (Def.'s Supp. S.M.F. ¶ 67.) Goodall filed an appeal, but the Board of Appeals affirmed the Planning Board's decision. (Def.'s Supp. S.M.F. ¶ 68.) Goodall then filed an appeal to the Superior Court under M.R. Civ. P. 80B, which was denied on May 20, 2011. (Def.'s Supp. S.M.F. ¶ 69); *Town of Georgetown v. Montgomery, et al.*, AP-10-4 (Me. Super. Ct., Sag. Cnty., May 20, 2011).

On June 7, 2011, Goodall sent a letter to plaintiffs explaining their right to appeal the Superior Court's decision and recommending against filing an appeal. (Def.'s Supp. S.M.F. ¶ 70.) On June 10, 2011, Goodall filed a Notice of Appeal solely for the purposes of protecting plaintiffs' right to appeal. (Def.'s Supp. S.M.F. ¶¶ 71-72.) On the same day, Goodall sent another letter to plaintiffs advising them to have another experienced land use lawyer review the question of whether to file, and informed them that he would not represent them in the

5



appeal. (Def.'s Supp. S.M.F. ¶ 72.) Plaintiffs later authorized Goodall to dismiss the appeal. (Def.'s Supp. S.M.F. ¶ 73.)

## Procedural History

Plaintiffs filed their complaint in October 2011. The original complaint was filed against Eaton Peabody and its attorneys (collectively, "Eaton Peabody defendants") who began representing plaintiffs in 2005. According to plaintiffs, Attorney Goodall referred this legal malpractice case to plaintiffs' current attorneys. Plaintiffs filed an amended complaint on May 21, 2012 to add additional counts for a total of six counts. The Eaton Peabody defendants moved to dismiss five of the counts, and the motion was granted on January 29, 2013. On August 29, 2013, plaintiffs filed a second amended complaint asserting an additional count, count 7, against Attorney Goodall. Count 6 was later dismissed as part of a settlement agreement between plaintiffs and the Eaton Peabody defendants.[4] The only remaining defendant is Attorney Goodall.

On September 23, 2014, defendant Goodall moved for summary judgment. After the court granted several motions to enlarge the time for plaintiffs to respond, plaintiffs filed their opposition to the motion on December 31, 2014. At the same time, plaintiffs filed a motion to file a third amended complaint. Oral argument was held on February 23, 2015.

## Standard of Review

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52

---

4 Plaintiffs have reserved the right to appeal the court's order dismissing counts 1-5.

6

(quoting *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting *N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." *Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." *Id.*

"In legal malpractice cases, plaintiff must show (1) a breach by the defendant attorney of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of the duty proximately caused an injury or loss to the plaintiff." *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 2000 ME 214, ¶ 7, 763 A.2d 121. "Proximate cause exists in professional malpractice cases where 'evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence. The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to judgment.'" *Id.* ¶ 8 (quoting *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778).

7

<u>Grandfathered Status</u>

The court only needs to decide one question to dispose of plaintiffs' claim against Goodall in the second amended complaint: was the plaintiffs' lot (lots 37 and 38) a non-conforming lot of record ("grandfathered lot") for purposes of the minimum lot size requirement when plaintiffs applied for the building permits? If plaintiffs' lot was not a grandfathered lot when they applied for the permits, then they were not entitled to build on those lots and there is nothing that Attorney Goodall or any other attorney could have done to obtain a different result.

Under the 1974 SZO, every lot with a principal structure was required to have at least 20,000 square feet. (Def.'s Supp. S.M.F. ¶¶ 9-10.) In 1975, plaintiffs' lot was created when Claude and Louise Montgomery conveyed lots 37 and 38 without conveying adjoining lots 39 and 40. (Def.'s Supp. S.M.F. ¶ 15.) After the conveyance, the resulting lot was less than 20,000 square feet.[5] Plaintiffs' lot was therefore an illegal non-conforming lot as of 1975, and from that time forward was unbuildable. *Day v. Town of Phippsburg*, 2015 ME 13, ¶ 18, ---A.3d--- ("[T]he grandfathered status of a merged nonconforming lot is permanently lost when that merged lot is unlawfully divided."). Because plaintiffs' lot was not buildable when they applied for the building permit, Attorney Goodall would not have been able to succeed by claiming that plaintiffs' lot had grandfathered status.

Plaintiffs argue several points in opposition to the motion for summary judgment. First, they argue that defendant Goodall was negligent for failing to advise plaintiffs to accept a settlement offer. That claim was not alleged in the

---

5 Plaintiffs admit this in their proposed third amended complaint. (Proposed Third Am. Compl. ¶¶ 78-79.)

8

second amended complaint, however, and the court addresses this new claim in its order on the motion to file a third amended complaint.

Next, plaintiffs argue that defendant is equitably estopped from arguing that the 1974 SZO had a minimum lot size. "Equitable estoppel 'precludes a party from asserting rights which might perhaps have otherwise existed . . . against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right.'" *Blue Star Corp. v. CKF Properties, LLC*, 2009 ME 101, ¶ 27, 980 A.2d 1270 (quoting *Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630). To succeed on this claim, plaintiffs must show that defendant Goodall made a misrepresentation. *Id.*

In this case, defendant Goodall is not asserting a "right" but only arguing that plaintiffs cannot prove their case. There is also no evidence that Goodall made any intentional misrepresentations. Even if Goodall "misrepresented" the case, plaintiffs' current counsel was obligated to independently research and evaluate the allegations in the complaint before filing it with the court. The doctrine of equitable estoppel does not apply.

Plaintiffs also argue that defendant Goodall has made judicial admissions because he drafted the original complaint in this matter and he cannot now contradict those admissions. "Admissions contained in a party's pleadings are binding on those parties both at trial and on appeal." *Burr v. Jordan*, 2008 ME 87, ¶ 9, 948 A.2d 582. Under this rule, the admissions are binding on the *party*, not the attorney drafting the pleading. Moreover, plaintiffs' current counsel, not Goodall, signed all of the pleadings in this matter.

9

Finally, plaintiffs argue that defendant failed to supplement his answers to interrogatories to disclose his new defense. But defendant Goodall's "defense" is simply that plaintiffs cannot prove that any negligence on his part proximately caused their harm. This is not an affirmative defense. In fact, in his answer to the second amended complaint, in response to plaintiffs' allegation that the 1974 SZO did not contain a minimum lot size requirement, Goodall answered that he had insufficient information to confirm or deny that statement and therefore denied it. (Goodall Answer to Second Am. Compl. ¶ 11.)

## Conclusion

Plaintiffs cannot prove that Attorney Goodall's alleged negligence proximately caused them any harm. Although plaintiffs are understandably upset by the results of the lengthy litigation over their property, by the time Goodall started representing them, there is nothing that could have saved their illegal structure. Plaintiffs' claim fails as a matter of law.

The entry is:

> Defendant Goodall's motion for summary judgment is GRANTED on count 7 of plaintiffs' second amended complaint.

Date: 3|24|16

Joyce A. Wheeler
Justice, Superior Court

Plaintiffs-Jed Davis Esq
Defendant Goodall-Wendell Large Esq

10

STATE OF MAINE                               SUPERIOR COURT
CUMBERLAND, ss                               CIVIL ACTION
                                             Docket No. CV-11-472

R. BRUCE MONTGOMERY, et al.,

        Plaintiffs

        v.                                   ORDER ON MOTION
                                             TO FILE THIRD
EATON PEABODY, LLP, et al.,                  AMENDED COMPLAINT

        Defendants


        Before the court is the plaintiffs' motion to file a third amended complaint.

The factual and procedural background of this case is fully set forth in the court's

order on the motion for summary judgment. Although the court relied on the

parties' summary judgment filings for background, the court must rule on the

motion to amend before ruling on the motion for summary judgment. *Sherbert v.

Remmel*, 2006 ME 116, ¶ 8, 908 A.2d 622. For the following reasons, the motion to

amend the complaint is denied.

## Background

        The following background of this case is based on the parties' summary

judgment filings and plaintiffs' allegations in the proposed third amended

complaint. Plaintiffs seek to amend their complaint to add additional counts that

allege defendant Clifford Goodall was negligent for failing to advise them that

their lot was never a grandfathered lot under the 1974 Shoreland Zoning

Ordinance and negligent for failing to advise them to accept a settlement offer

(counts 8-10).

When plaintiffs hired Goodall, he apparently advised them that their lot was not a grandfathered lot based on a finding of fact in an earlier administrative proceeding. (Proposed Third Am. Compl. ¶ 75.) Nevertheless, plaintiffs retained Goodall to try to achieve some understanding with the Town and their neighbors so they could salvage at least part of the illegal structure. (Proposed Third Am. Compl. ¶¶ 40-41.) Thus, when plaintiffs hired Goodall, plaintiffs and Goodall assumed that their lot was not a grandfathered lot because of the prior administrative finding of fact. (Montgomery Dep. 223:3-19; Haddock Aff. ¶ 11.) In fact, plaintiffs' original malpractice claim against Goodall was based on Goodall conceding that the lot was not a grandfathered lot before the Planning Board. (Proposed Third Am. Compl. ¶ 75.) When plaintiffs lost their bid to retain their structure, Goodall allegedly referred the case to plaintiffs' current counsel and advised that plaintiffs might have a malpractice claim based on Eaton Peabody's failure to contest the finding that their lot was not grandfathered.

As discussed in the court's order on defendant's motion for summary judgment, plaintiffs' lot was never a grandfathered lot. Thus, the assumption that the lot was not grandfathered at the time Goodall started representing plaintiffs was correct, albeit for the wrong reason. Plaintiffs' new claims against Goodall allege that he should have advised them that their lot was never a grandfathered lot under the 1974 Shoreland Zoning Ordinance. If they had known that fact, they now allege, they would have been more amenable to settlement.

## Discussion

Defendants argue that plaintiffs' motion to amend the complaint should be denied because of plaintiffs' delay in filing it. "Although the passage of time, without more, is not grounds for denying a motion to amend, undue delay

2

removes any presumption in favor of allowing the amendment." *Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales, Inc.*, 1998 ME 53, ¶ 16, 707 A.2d 1311. If the party seeking amendment provides no reasonable excuse for the delay, the court may deny the motion. *Efstathiou v. The Aspinquid, Inc.*, 2008 ME 145, ¶ 22, 956 A.2d 110. In addition to undue delay, when "a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend." *Glynn v. City of South Portland*, 640 A.2d 1065, 1067 (Me. 1994).

The court agrees with defendant that plaintiffs' motion to amend the complaint must be denied. Plaintiffs seek amendment of the complaint over three years after the original complaint was filed and over a year after the second amended complaint was filed. The proposed third amended complaint includes allegations that directly contradict plaintiffs' current theory of professional negligence. If the court granted the amendment, it would completely change the nature of this legal malpractice case. These claims could have been brought earlier, before both parties spent significant resources on discovery.

Plaintiffs argue that they did not know Goodall would argue that the lot was never a grandfathered lot and they assert the new claims in response to Goodall's argument. Plaintiffs have not provided the court with any reason as to why they could not have discovered that the 1974 Shoreland Zoning Ordinance had a minimum square footage requirement for residential structures. They allege that they relied on Attorney Goodall's advice, but it is plaintiffs' current counsel that signed and filed the original complaint and all subsequent pleadings in this suit. Plaintiffs' counsel was obligated to review filings submitted to the court. *See* M.R. Civ. P. 11(a). At least by the time the second amended complaint

3

was filed, which added Goodall as a defendant, plaintiffs could no longer rely on Goodall's representations about their case.

The court also notes that plaintiffs' new claims are difficult to reconcile with their claim in count 7 of the second amended complaint. In count 7, plaintiffs allege that Goodall was negligent for assuming plaintiffs' lot was not a grandfathered lot. (Proposed Third Am. Compl. ¶¶ 69-75.) In the third amended complaint, they allege that Goodall should have specifically told them that their lot was never a grandfathered lot. If Goodall advised plaintiffs that their lot was not a grandfathered lot from the beginning, it is difficult to understand why the reason it was not grandfathered had any impact on his representation. By the time Goodall started representing plaintiffs, grandfathered status was no longer a contested issue; Goodall was hired for damage control.

Because plaintiffs' lot did not have grandfathered status, there is nothing Attorney Goodall could have done to prevent the town from denying the building permits. Although plaintiffs argue that Goodall should have advised them to accept a settlement offer from their neighbors, any settlement between plaintiffs and their neighbors would not have been binding on the Town. Only the Town has the authority to issue plaintiffs a building permit or allow them to keep a structure in violation of the Town's Shoreland Zoning Ordinance. Any opinion on the likelihood that the Town would have issued a permit or declined to bring an enforcement action would be speculative.

The entry is:

Plaintiffs' motion to file a third amended complaint is DENIED.

4

Date:  3/24/15

_____
Joyce A. Wheeler
Justice, Superior Court

5

STATE OF MAINE
CUMBERLAND, ss

R. BRUCE MONTGOMERY
and WANDA HADDOCK,

Plaintiffs

v.

EATON PEABODY, LLP,
JUDY METCALF, and
WILLIAM V. FERDINAND, JR.,

Defendants

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-472
*N/M -CUM - 1/29/2013*

ORDER ON MOTION
TO DISMISS

STATE OF MAINE
Cumberland, ss, Clerk's Office

JAN 29 2013

RECEIVED

Before the court is the defendants' motion to dismiss[1] counts I through V of the amended complaint. For the following reasons, the motion is granted.

At its 8/17/05 meeting, the Georgetown Planning Board voted to rescind the Montgomery permit no. 0424. (R. Tab 2.) The plaintiffs challenged the Planning Board's action. (R. Tab 3.) On 10/17/05, defendant Ferdinand argued that Mr. Montgomery had not received notice that revocation of permit no. 0424 would be considered at the 8/17/05 hearing. (R. Tab 3 at 1.) Defendant Ferdinand also argued that the lot size was grandfathered under the Shoreland Zoning Ordinance. (R. Tab 3 at 2.)

On 10/31/05, the Georgetown Board of Appeals made findings and conclusions[2] but remanded the matter to the Planning Board for reconsideration because the plaintiffs had not been properly notified of the 8/17/05 meeting. (R. Tab 4 at 2.)

---

[1] The parties have submitted an amended joint stipulation of documents. See Moody v. State Liquor & Lottery Comm'n, 2004 ME 20, ¶ 10, 843 A.2d 43.

[2] In the decision, the Board included finding #8, "The lot at issue was created in 1999, is less than two acres in area, and is non-conforming under the Shoreland Zoning Ordinance, and is not a "non-conforming Lot of Record." The Board included conclusion #1, "The Planning Board had the authority to revoke the permit." (R. Tab 4.)

1

On 11/16/05, the Planning Board held a hearing on the remand from the Board of Appeals with regard to the 8/17/05 rescinding of the Montgomery permit. (R. Tab 5.) Defendant Ferdinand stated that the plaintiffs had no objection to the Board's revocation of the part of the permit that dealt with expansion of the existing principal structure. He argued that a valid permit for the separate garage still existed. (Id.) The Planning Board voted to revoke the part of the permit that dealt with the expansion of the principal structure. (Id.)

Defendant Metcalf represented the plaintiffs in an enforcement action by the Town of Georgetown and a boundary line dispute. These proceedings are the subject of count VI.

In 2008, the plaintiffs, appearing pro se, sought a new building permit[3] for the accessory structure. The Planning Board denied the application. (R. Tabs 6 & 7.) The plaintiffs, represented by successor counsel, appealed the Planning Board's decision. After hearings, the Board of Appeals determined that no building permit could be issued. (R. Tabs 8-12.)

In 2010, the plaintiffs submitted another application to modify the accessory structure. That application was denied. (R. Tabs 13-14.) A Rule 80B appeal followed. After remand and additional findings, the Superior Court affirmed the decision of the Planning Board. (R. Tabs 15-18.) An appeal of the Superior Court's decision to the Law Court was voluntarily dismissed by the plaintiffs.

In counts I through V, the plaintiffs allege that defendants Eaton and Ferdinand were negligent because they failed to appeal the "findings of fact" #8, failed to argue before the Board of Appeals on 10/17/05 that their lot was not a nonconforming lot of

---

[3] Permit no. 0424 was scheduled to expire according to its terms on 09/15/05. (R. Tab 1; see Peterson v. Town of Rangley, 1998 ME 192, ¶ 12, 715 A.2d 930 (expired variance has no res judicata effect.))

record, failed to advise the plaintiffs of their right to appeal finding #8, failed to ask the Planning Board at the 11/16/05 hearing to find that the lot was a non-conforming lot of record, and failed to be familiar with, and advise the plaintiffs about, the Shoreland Zoning Ordinance and failed to evaluate fully the implications of finding #8.

Because the 10/31/05 remand by the Board of Appeals was not a final judgment, no appeal was possible. See Bruesewitz v. Grant, 2007 ME 13, ¶ 5, 912 A.2d 1255, 1257; see also Aubry v. Town of Mount Desert, 2010 ME 111, ¶ 2, 10 A.3d 662. On 11/16/05, the Planning Board voted to revoke the "part of permit 0424 dealing with expansion of the principal structure." (R. Tab 5.) The minutes reflect that the plaintiffs "had no objection to the Board's revocation of the part of the permit dealing with expanding the existing structure." (R. Tab 5.) Accordingly, the plaintiffs did not suffer a particularized injury as a result of the decision of the Board. See Witham Family Ltd. P'ship v. Town of Bar Harbor, 2011 ME 104, ¶ 7, 30 A.3d 811; Brooks v. Town of North Berwick, 1998 ME 146, ¶ 11, 712 A.2d 1050.

Further, finding #8 of the Board of Appeals was not relevant or essential to the 10/31/05 remand, which was based on inadequate notice, or to the 11/16/05 revocation of part of the permit, which was based on a violation of the setback requirements. (R. Tabs 4-5; but see R. Tab 18 at 6, n.7; see Sargent v. Buckley, 1997 ME 159, ¶ 6, 697 A.2d 1272, 1274.)

Finally, the record shows that at the 9/29/09 and 10/16/09 Board of Appeals hearings on the 10/15/08 Planning Board denial of the plaintiffs' application for a permit for a new accessory structure, the plaintiffs conceded that the lot was not a grandfathered nonconforming lot of record. (R. Tabs 8-9.) The Board of Appeals found that the lot was a nonconforming lot of record. (R. Tab 12.) The Board did not reference the 2005 finding. (Id.)

3

The entry is

> The Defendants' Motion to Dismiss Counts I-V of the Plaintiffs' Amended Complaint is GRANTED. Counts I-V of the Amended Complaint are DISMISSED.

Dated: January 28, 2013

Nancy Mills
Justice, Superior Court

CUM-CV-11-472

4

--------------------------------------------------------------------

01 0000001686          DAVIS, JED

|   | 86 WINTHROP STREET AUGUSTA ME 04330 | | | |
|---|-------------------------------------|-----|------|------------|
| F | R BRUCE MONTGOMERY                  | PL  | RTND | 10/27/2011 |
| F | WANDA HADDOCK                       | PL  | RTND | 10/27/2011 |

02 0000000788          KUBETZ, BERNARD

|   | 80 EXCHANGE ST PO BOX 1210 BANGOR ME 04402-1210 | | | |
|---|-------------------------------------------------|-----|------|------------|
| F | WILLIAM V FERDINAND, JR                         | DEF | RTND | 01/09/2012 |
| F | EATON PEABODY LLP                               | DEF | RTND | 01/09/2012 |