586 S.E.2d 599

**ZEPSA CONSTRUCTION, INC, Respondent,**

v.

**Phillip A. RANDAZZO and Virginia M. Randazzo, Appellants.**

**No. 3673.**

Court of Appeals of South Carolina.

Heard May 13, 2003.
Decided Sept. 15, 2003.

---

1. Because of our resolution of this issue, we need not address Ellison's remaining issue.

Douglas Gay, of Rock Hill, for Appellants.

S. Jackson Kimball, III, of Rock Hill, for Respondent.

CURETON, J.:

In this action to foreclose a mechanic's lien, the master ordered judgment against Phillip and Virginia Randazzo in the amount of $50,846.00, and awarded attorney's fees to Zepsa in the amount of $8,123.40. The Randazzos appeal, arguing the master erred in: (1) including lost profits and overhead in the amount of the mechanic's lien; and (2) awarding attorney's fees to Zepsa. We affirm as modified.

## FACTS

Phillip and Virginia Randazzo (collectively, "Randazzos"), owned and operated an Italian restaurant near Tega Cay Village Shopping Center in Fort Mill, South Carolina. In September 1996, they contacted Ed Zepsa, president of Zepsa Construction, Inc. ("Zepsa") to inquire about the design and construction of a new restaurant. After several months of discussions and negotiations, the parties entered into on May 14, 1997, a written construction contract for Zepsa to build the restaurant. The agreed price was $610,000.00. The terms of the contract required a deposit in the amount of $61,000.00 to be paid when the contract was signed.

On May 29, 1997, the Randazzos gave written "notice to proceed" with construction. At that time, they provided Zepsa with a check for $21,000.00, representing part of the agreed deposit. Zepsa did not begin work at this time because the Randazzos had not paid the full deposit. By letter dated July 1, 1997, Zepsa agreed to accept the remainder of the deposit in two installments. These installments were to be paid at the time of the first two payment requests after construction began. Zepsa began work on the site on July 7, 1997. Between July 15 and August 2, 1997, Virginia Randazzo (Virginia) spoke by phone with either Ed Zepsa or the project manager on four occasions. During these conversations, she asked about terminating the contract due to the Randazzos' marital problems, instructed Zepsa to stop work, and told Zepsa to continue to delay construction while the Randazzos tried to resolve their marital difficulties. On August 3, Virginia called Ed Zepsa and told him she did not want to continue with the project.

On August 4, the Randazzos contacted Ed Zepsa and instructed him to proceed with construction. In response, he submitted a payment request seeking payment of $8,674.00 for work that had been performed and $40,000.00 for the balance of the deposit. Also on August 4, Zepsa received a letter from the Randazzos' attorney requesting that Zepsa abide by the deposit payment schedule and proceed with the work. Zepsa resumed work on the project.

On August 11, Zepsa submitted a payment request for work performed through July and included a request for the next deposit installment. No payment was made for this completed work or the deposit installments. By letter dated August 28, 1997, the Randazzos' attorney gave notice of termination of the contract.

Zepsa timely filed a lis pendens and complaint on October 16, 1997. The complaint sought judgment against the Randazzos and foreclosure of a mechanic's lien that Zepsa had previously filed and served. The matter was referred with finality to the master. At the hearing, Zepsa presented uncontested evidence that Zepsa performed construction work on the job site in the amount of $10,846.00. In his order dated January 22, 2001, the master granted Zepsa judgment against

the Randazzos in the amount of $50,846.00, which included the unpaid balance for work already performed and payment for the remaining deposit balance of $40,000.00. By order dated March 22, 2001, the master awarded Zepsa attorney's fees in the amount of $8,123.40, and costs in the amount of $1,490.60. The Randazzos appeal.

## STANDARD OF REVIEW

"An action to foreclose a mechanic's lien is a law case in South Carolina." *Keeney's Metal Roofing, Inc. v. Palmieri*, 345 S.C. 550, 553, 548 S.E.2d 900, 901 (Ct.App.2001). "In an action at law, tried without a jury, the judge's findings will not be disturbed unless they are without evidentiary support." *King v. PYA/Monarch, Inc.*, 317 S.C. 385, 388, 453 S.E.2d 885, 888 (1995). "His findings are equivalent to those of a jury in an action at law." *Id.* at 389, 453 S.E.2d at 888.

## DISCUSSION

### I. Mechanic's Lien

The Randazzos argue the master erred by including lost profits in the amount of the mechanic's lien when only a small portion of the contract work was actually performed.

Section 29–5–10 of the South Carolina Code of Laws defines a mechanic's lien. S.C.Code Ann. § 29–5–10 (1991 & Supp. 2002).[1] This section provides in pertinent part:

(a) A person to whom a debt is due for labor performed or furnished or for materials furnished and actually used in the erection, alteration, or repair of a building or structure upon real estate or the boring and equipping of wells, by virtue of an agreement with, or by consent of, the owner of the building or structure, or a person having authority from, or rightfully acting for, the owner in procuring or furnishing the labor or materials shall have a lien upon the building or structure and upon the interest of the owner of the building

---

1. Although we recognize section 29–5–10 was amended in 1999, we cite to the most current version of this subsection given no substantive amendments have been made to the subsection since this litigation began.

or structure in the lot of land upon which it is situated to secure the payment of the debt due to him.

S.C.Code Ann. § 29–5–10(a) (1991).

In the instant case, the master granted a judgment against the Randazzos in the amount of $50,846.00 based on two grounds. First, the master found Zepsa's lost profits and overhead expenses were recoverable as an element of damages for the Randazzos' breach of the construction contract. Secondly, the master concluded "these elements of damage [were also] recoverable in a mechanic's lien foreclosure action." The master reasoned:

> Since Zepsa is entitled to profits and overhead expenses, there is a reasonable and equitable basis for claiming the balance of the deposit as an integral part of the payment due under the contract, unrelated to actual work performed. Thus, Zepsa is entitled to be paid the balance of the deposit due, along with the balance due for work which was performed.

As a threshold matter, we find the master erred in awarding Zepsa an in personam judgment based on a breach of contract cause of action.[2] In its complaint, Zepsa only pleaded factual allegations consistent with statutory recovery under a mechanic's lien.[3] As such, Zepsa could not recover an in personam judgment against the Randazzos based on a breach of contract action that was neither pleaded nor permitted by the statutory parameters for the foreclosure of a mechanic's lien. *See Atl. Coast Lumber Corp. v. Morrison,* 152 S.C. 305, 309–10, 149 S.E. 243, 245 (1929) ("[I]n a proceeding strictly to enforce a mechanic's lien, the petitioner may not recover a personal judgment against the owner of the property or such judgment for any deficiency that may result from

---

2. The Randazzos did not separately argue this issue. However, we must necessarily address it because it is the underlying basis for their challenge to the amount of the mechanic's lien award. The Randazzos essentially assert the award for overhead and lost profit constituted contract damages that were not recoverable in Zepsa's action to foreclose a mechanic's lien. In fact, they state in their brief "[Zepsa] has successfully parlayed a damage award for lost profits in a breach of contract action into a mechanic's lien."

3. In their Answer, the Randazzos counterclaimed for damages based on the allegation that Zepsa breached the construction contract.

its sale."); *Smythe v. Monash,* 109 S.C. 82, 85, 95 S.E. 138, 139 (1918) (holding trial judge erred in awarding in personam judgment to plaintiff who brought an action to foreclose a mechanic's lien given "it would not have been in accordance with the terms of the statute providing for the foreclosure of a mechanic's lien"); *Metz v. Critcher,* 83 S.C. 396, 65 S.E. 394 (1909) (finding in action to foreclose mechanic's lien trial judge was not authorized to award in personam judgment but was limited to determining amount due under mechanic's lien statute); *Tenny v. Anderson Water, Light & Power Co.,* 67 S.C. 11, 45 S.E. 111 (1903) (concluding plaintiff, who brought an action under the statutory proceedings to foreclose a mechanic's lien, could not recover a judgment in personam against the defendant); *cf. Arnet Lewis Constr. Co. v. Smith–Williams & Assocs., Inc.,* 269 S.C. 143, 236 S.E.2d 742 (1977) (holding where amended complaint included allegations sufficient to support a cause of action in personam for breach of contract as well as foreclosure of a mechanic's lien, petitioner could recover in personam judgment even though mechanic's lien was dismissed by consent). Therefore, Zepsa was limited to an action to foreclose a mechanic's lien.

Although we recognize a mechanic's lien is based on an underlying contract that must be referenced to determine the amount owed for the lien, an action strictly limited to the foreclosure of a mechanic's lien cannot be utilized to recover contract damages. *See* S.C.Code Ann. § 29–5–160 (1991) ("The [mechanic's lien] petition shall contain a brief statement of the contract on which it is founded and of the amount due thereon, with a description of the premises subject to the lien and all other material facts and circumstances, and shall pray that the premises may be sold and the proceeds of the sale applied to the discharge of the demand."); *Sea Pines Co. v. Kiawah Island Co.,* 268 S.C. 153, 159, 232 S.E.2d 501, 503 (1977) ("[A] mechanic's lien under the statute is not a vehicle for collecting damages for breach of contract. The statute, by its own terms, secures a debt 'for labor performed or furnished or for materials furnished and actually used.'"); *Wood v. Hardy,* 235 S.C. 131, 110 S.E.2d 157 (1959) (holding supplier, who was not paid for materials furnished to contractor, was entitled to a mechanic's lien for only such amount as would have been due to contractor in light of his breach of contract);

*see also Bangor Roofing & Sheet Metal Co. v. Robbins Plumbing Co.,* 151 Me. 145, 116 A.2d 664, 666 (1955) (A mechanic's "lien is dependent upon the existence of contract, express or implied, and the obligation of debt. The lien is incident and security to a legal liability to pay.").[4]

Given Zepsa's recovery is limited to that as provided for in the mechanic's lien statute, the question becomes whether the overhead expenses and lost profits were lienable items. In concluding these items were recoverable under a mechanic's lien, the master relied on our Supreme Court's decision in *Sentry Eng'g & Constr., Inc. v. Mariner's Cay Dev. Corp.,* 287 S.C. 346, 338 S.E.2d 631 (1985). In *Sentry,* a builder, Sentry, and a developer executed two separate agreements for the construction of a condominium. The first agreement provided for the cost of the construction and the second provided for the additional compensation of overhead and profit. As the project neared completion, Sentry filed a mechanic's lien for balances due under both agreements and change orders. Sentry exercised its right to arbitration and filed a claim in the amount of its mechanic's lien. Sentry later amended its arbitration demand to include claims for damages for wrongful termination of the construction contract. The American Arbitration Association (AAA) found Sentry was entitled to $503,271.00. The circuit court adopted the AAA's award as a judgment, granted Sentry summary judgment on its mechanic's lien foreclosure petition, assessed interest, and awarded Sentry attorney fees.

On appeal, the developer raised several issues, including the assertion the circuit court judge erred in holding that profit and overhead were components of "debt" under the mechanic's

---

4. The overhead expenses and lost profits would have been appropriate elements of damages pursuant to a breach of contract action. *See* S.C.Code Ann. § 29–5–420 (1991) ("Nothing contained in this chapter shall be construed to prevent a creditor in such contract from maintaining an action thereon in like manner as if he had no such lien for the security of his debt."); *Manning v. City of Columbia,* 297 S.C. 451, 455, 377 S.E.2d 335, 337 (1989) ("Damages recoverable for breach of contract either must flow as a natural consequence of the breach or must have been reasonably within the parties' contemplation at the time of the contract."); *Drews Co. v. Ledwith–Wolfe Assocs.,* 296 S.C. 207, 210, 371 S.E.2d 532, 534 (1988) ("Profits lost by a business as the result of a contractual breach have long been recognized as a species of recoverable consequential damages in this state.").

lien statute. *Id.* at 349, 338 S.E.2d at 633. Our Supreme Court rejected the developer's argument. The Court held "that overhead and profit, when stated as part of the contract price, are proper components of a mechanic's lien." *Id.* at 352, 338 S.E.2d at 635. The Court found that " '[s]uch items, as such and standing by themselves, are nonlienable, but they become lienable when they are included in a contract price or are reflected in the reasonable value of labor or materials furnished.' " *Id.* at 352, 338 S.E.2d at 634 (quoting 53 Am. Jur.2d *Mechanics' Liens* § 107 (1970)).

■ Based on our reading of *Sentry,* we believe the Supreme Court expanded the items that are recoverable under the mechanic's lien statute to include overhead and profit. However, this holding is only available in the limited situation where the terms of overhead and profit are agreed upon by the parties and are subsequently embodied within a contract.

■ In view of the specific facts of the instant case, *Sentry* is inapplicable for several reasons. Significantly, the parties in *Sentry* entered into a separate agreement that specifically provided for the recovery of overhead and profit. In contrast, Zepsa and the Randazzos did not execute an agreement providing for overhead and profit. Their contract is silent concerning these items. Even though Ed Zepsa testified the deposit constituted compensation for pre-construction or "up front" work, his testimony is not determinative of the agreed upon terms of the contract. There is no evidence the parties agreed to pay $61,000.00 as an upfront cost. Additionally, the account statement of the contract does not list overhead and profit as terms, but instead indicates the $61,000.00 is an additional amount that represents 10% of the $610,000.00 contract price. Furthermore, the construction in *Sentry* was substantially completed whereas only $10,000.00 of the $610,000.00 Zepsa project had been completed.

Because we find *Sentry* distinguishable, Zepsa is limited to recovery provided for by the strict terms of the mechanic's lien statute. This "statute provides that debts for 'labor performed' or 'materials furnished' are lienable debts." *Hardin Constr. Group, Inc. v. Carlisle Constr. Co.,* 300 S.C. 456, 457, 388 S.E.2d 794, 795 (1990); *see Johnson v. Barnhill,* 279 S.C. 242, 245, 306 S.E.2d 216, 218 (1983) ("In order to estab-

lish a mechanic's lien, it is generally necessary that the labor performed go into something which has attached to and become a part of the real estate, adding to the value thereof."); *Tenny v. Anderson Water, Light & Power Co.*, 67 S.C. 11, 17, 45 S.E. 111, 113 (1903) (" 'The extent of the remedy afforded by the [mechanic's lien] act is to enforce the lien upon the property covered.' " (quoting *Johnson v. Frazee*, 20 S.C. 500 (1884))).

With respect to overhead and profits, the extent of a contractor's recovery has been interpreted as follows:

> A contractor is only allowed a privilege for claims expressly granted by the statute and equitable considerations do not enlarge such right. Generally, overhead costs and lost profits are not within the purview of a mechanics' lien statute; but, where overhead costs and profits are provided for in the contract, they become subject to collection on a mechanic's lien.

56 C.J.S. *Mechanics' Liens* § 196 (2000).

As testified to by Ed Zepsa, the $61,000.00 deposit was not associated with any labor performed. The master also recognized this fact given he stated in his order "there is a reasonable and equitable basis for claiming the balance of the deposit as an integral part of the payment due under the contract, unrelated to actual work performed." Thus, we find the master erred in finding Zepsa was entitled to the balance of this amount under a mechanic's lien action. Moreover, we note the mechanic's lien statement of account, which outlines the amount that is recoverable, is not included in the Record on Appeal. Despite this omission from the record, there is a letter from Zepsa's attorney to the Randazzos' attorney that itemizes the amount of Zepsa's claim. In this accounting, the "Total due on work" is valued at $10,846.00. Accordingly, Zepsa's recovery under its mechanic's lien action is limited to $10,846.00, an amount that the parties agree represents the work completed.

Our decision is consistent with the holdings in other jurisdictions. *See, e.g., In re Reg'l Bldg. Sys., Inc.*, 273 B.R. 423, 443 (Bankr.D.Md.2001), *aff'g* 320 F.3d 482 (4th Cir.2003) ("[A] claim for lost profits arising from a breach of contract based on wrongful termination of a contract before construction is

completed cannot be asserted as a mechanic's lien or as a claim payable from contractor's trust."); *Tilt–Up Concrete, Inc. v. Star City/Federal, Inc.,* 255 Neb. 138, 582 N.W.2d 604 (1998) (concurring with other jurisdictions which deny lien for lost profits because they compensate a party for work not yet performed); *Fortune v. Million Dev. Co.,* 159 Ariz. 549, 768 P.2d 1194, 1197 (Ct.App.1989) (holding that "a lien filed before completion of a contract is limited to the value of the labor or services actually furnished at the time the lien is filed ... rather than the full contract price payable after completion of the contract"); *Bangor Roofing & Sheet Metal Co. v. Robbins Plumbing Co.,* 151 Me. 145, 116 A.2d 664 (1955) (recognizing that overhead and lost profit standing by themselves are not lienable); *see generally* W.J. Dunn, Annotation, *Amount For Which Mechanic's Lien May Be Obtained Where Contract Has Been Terminated or Abandoned by Consent of Parties or Without Fault on Contractor's Part,* 51 A.L.R.2d 1009 (1957 & Supp.2003) (discussing the following methods for valuing a mechanic's lien where contract had been prematurely terminated: (1) amount of work performed up to the date work was stopped; (2) amount proportional to entire contract price; (3) amount of profit included in lien in limited jurisdictions; (4) amount of profit excluded; and (5) amount includes contract price less amount of completion).

## II. Attorney's Fees

The Randazzos argue the master erred by awarding attorney's fees to Zepsa and not to them.

The Randazzos raise this issue in conjunction with their first issue. They assert that "[i]f this Court reverses the lower court's finding regarding the lien, the Appellants will become the prevailing party under the statute." The Randazzos do not make any argument that the master erred in awarding attorney's fees other than to contend that because we should reverse on the first issue, we should also reverse the award of attorney's fees.

■ "The determination as to the amount of attorney's fees that should be awarded under the mechanic's lien statute is addressed to the sound discretion of the trial court." *Keeney's Metal Roofing, Inc.,* 345 S.C. 550, 553, 548 S.E.2d 900,

901 (Ct.App.2001). "The court's decision regarding such a matter will not be disturbed absent an abuse of discretion." *Id.*

In an action to foreclose a mechanic's lien, the award of attorney's fees is governed by section 29–5–10(a). This section states in pertinent part, "The costs which may arise in enforcing or defending against the lien under this chapter, including a reasonable attorney's fee, may be recovered by the prevailing party." S.C.Code Ann. § 29–5–10(a) (1991).

Section 29–5–10(b) outlines the procedure for determining the "prevailing party." The statute in effect at the time of this action provides in relevant part:

For purposes of the award of attorney's fees, the determination of the prevailing party is based on one verdict in the action. One verdict assumes some entitlement to the mechanic's lien and the consideration of compulsory counterclaims. The party whose offer is closer to the verdict reached is considered the prevailing party in the action. If the difference between both offers and the verdict is equal, neither party is considered to be the prevailing party for purposes of determining the award of costs and attorney's fees.

If the plaintiff makes no written offer of settlement, the amount prayed for in his complaint is considered to be his final offer of settlement.

If the defendant makes no written offer of settlement, the value of his counterclaim is considered to be his negative offer of settlement. If the defendant has not asserted a counterclaim, his offer of settlement is considered to be zero.

S.C.Code Ann. § 29–5–10(b) (Supp.2002).[5]

■ In the instant case, Zepsa made a written offer of settlement for $40,000.00. Because the Randazzos did not

---

**5.** We note section 29–5–10(b) was substantively amended in 1999 and the new version became effective on June 11, 1999. Act No. 83, 1999 S.C. Acts 269. Prior to the amendment, the portion of the statute applicable to settlement offers and the award of attorney's fees stated, "If the defendant makes no written offer of settlement, his offer of settlement is considered to be zero." S.C.Code Ann. § 29–5–10(b) (1991); *see Lauro v. Visnapuu,* 351 S.C. 507, 570 S.E.2d 551 (Ct.App.

make an offer of settlement, the value of their counterclaims, $88,000, is considered a negative offer of settlement. As previously discussed, the $40,000.00 deposit should not have been included as part of the mechanic's lien and, thus, Zepsa should have been awarded $10,864.00. Even excluding the amount of the deposit, Zepsa still remains the prevailing party and was properly awarded attorney's fees. Given the Randazzos do not challenge the amount of the award of attorney's fees, we affirm the master's decision.

## CONCLUSION

In view of the foregoing analysis, we hold the master erred in awarding $50,486.00 to Zepsa for the mechanic's lien. Because the $40,000 balance of the agreed upon deposit, which the parties characterized as overhead expenses and lost profit, was not a term of the construction contract, it was not a proper lienable item under the mechanic's lien statute. The master did, however, correctly award $10,864.00 to Zepsa for the value of work that had been completed on the project. Finally, we affirm the master's decision to award Zepsa attorney's fees given it was the "prevailing party" under the mechanic's lien statute.

**AFFIRMED AS MODIFIED.**

HEARN, C.J. and STILWELL, J., concur.

---

2002), *cert. denied* (Apr. 24, 2003) (discussing determination of prevailing party for award of attorney's fees in mechanic's lien action under pre- and post-amendment version of section 29–5–10(b)).

The Randazzos do not present any argument concerning which version of the statute is applicable to their case. However, based on the following procedural facts, we find the post-amendment version of the statute governs our analysis in this case. Zepsa filed its Complaint on October 16, 1997. The Randazzos filed their Answer and Counterclaim on August 17, 1998, to which a Reply was made on September 10, 1998. On November 13, 2000, Zepsa made its offer of settlement. The master entered his final order for judgment and foreclosure of the mechanic's lien on January 22, 2001. Subsequently, the master awarded Zepsa attorney's fees by order dated March 22, 2001. Given Zepsa made its offer of settlement and the master awarded attorney's fees after the 1999 amendment, we conclude the post–1999 version of the statute is applicable to this case.