THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 Witt General
 Contractors, Inc., Respondent,
 
 
 
 
 

v.

 
 
 
 
 Robert Farrell, Appellant.
 
 
 
 
 

Appeal From Horry County
 Honorable Willard D. Hanna Jr., Special Referee

Unpublished Opinion No. 2011-UP-203
 Submitted March 1, 2011  Filed May 4,
2011    

AFFIRMED

 
 
 
 Tucker S. Player, of Columbia, for
 Appellant.
 V. Denise Hamilton and Stacy L. Stanley, of
 Little River, for Respondent.
 
 
 

PER CURIAM:  In
 this mechanic's lien foreclosure action, appellant Robert Farrell appeals the
 decision of the special referee asserting error in the referee's (1) failure to
 offset the amount of damages for his breach of warranty claim against the
 judgment in favor of respondent Witt General Contractor's, Inc., (hereinafter
 Contractor) (2) award of judgment for Contractor on its breach of contract
 cause of action, and (3) award of judgment on Contractor's mechanic's lien
 cause of action.  We affirm.[1]
FACTUAL/PROCEDURAL BACKGROUND
This action arises from a
 dispute over construction on a house.  Contractor filed a mechanic's lien and
 thereafter sought foreclosure of the mechanic's lien in an action asserting
 causes of action of breach of contract and unjust enrichment.  Contractor
 asserted he was entitled to judgment in the sum of $32,137.53, together with
 interest, costs and attorney's fees.  Farrell answered and counterclaimed,
 raising various defenses and asserting deficiencies in Contractor's work to
 support his counterclaims for, among other things, negligence, unjust
 enrichment, and breach of warranty.  
By consent, the matter was
 referred to a special referee. At the hearing on the matter, Wilbur Witt, the
 owner and president of Witt General Contractor's, Inc., testified he was first
 contacted by Farrell to work on the house in question around the beginning of
 October 2004.  According to Witt, Farrell was interested in purchasing the home
 and wanted him to "check out" the house and see "whether or not
 he could go ahead and purchase it and finish it and put it on the market"
 to make a profit.  Based on his evaluation, Witt estimated it would cost
 between $80,000 and $100,000 to repair the home.  Witt stated his estimation
 was just a general overview of the house when he went through it, and he did
 not know exactly "how bad" the house would be until he got in there. 
 When asked about his arrangement with Farrell, Witt testified that when his men
 were on the jobsite, "it was going to be time and material," that he
 was going to pay for all the subcontractors that he subbed out, and at the end
 of the project they would "divvy up some of the profits." [2] 
 Witt denied the parties had a fixed price contract, stating he would never have
 accepted that because of the potential for unforeseen problems.  When
 explaining what he meant by his assertion that he was to be paid on a time and
 material basis, Witt stated the time spent on the job was to be billed at his
 company's hourly rate for each employee.  When Witt took his general
 walk-through of the property, he noticed some framing problems, but once he got
 into the project he found other problems with the house, most notably the
 trusses.  The problems with the trusses then caused significant other problems
 throughout the house.  Witt maintained he could not have known about these
 problems when he talked with Farrell about the project in October, as he did
 not have the truss diagrams at that time. 
Contractor began working on
 the home on December 7, 2004.  In order to provide money for the work, an
 account was opened by Farrell at a local bank with Farrell and Witt's names on
 it.  Farrell initially wired $25,000 into the account and Contractor would pay
 bills from the account as needed, calling Farrell when the account would get
 low so that Farrell could wire more money.  The parties agreed that Farrell
 deposited a total of $115,000 into the account for construction of the home. 
 Toward the end of the project, Farrell informed Witt that he could not put any
 more money into the house.  Because there were outstanding bills, Witt borrowed
 $20,000 on a line of credit and put the money in the account for payment of
 these bills.  Around the middle of May 2005, Contractor had a final inspection
 on the home and obtained a certificate of occupancy.  According to Witt, the
 home still needed some touch-up, clean-up and repair work, but Farrell withdrew
 the remaining money from the account and prevented Contractor from going on the
 job site to finish the work.  The money Farrell removed from the account
 included over $4,000 of the unspent portion of the line of credit money Witt
 had provided.
Included within the cost of
 the project was labor provided by two of Witt's employees.  Witt acknowledged
 that he billed them at a rate of $45 an hour for the project, and what he
 billed for their labor was higher than what the employees were actually paid.
 Witt explained that $45 was the rate he billed for a "time and
 material" job, and that this allowed him to cover his overhead and
 profit.  He noted his overhead included workers' compensation and liability
 insurance, as well as fuel costs, his own salary and "everything else it
 takes to operate a business."  Witt stated $45 was his going rate for any
 customer.
Farrell testified that he
 asked Witt to look at the house and let him know what he thought it would take
 to finish the construction.  He stated Witt informed him he could complete the
 house for between $80,000 and $100,000, closer to $100,000 if he wanted certain
 upgrades.  According to Farrell, the parties had a verbal contract.  He claimed
 it was a fixed price contract, where Witt would complete the house for between
 $80,000 and $100,000.  When they had already spent $110,000 and Witt asked for
 $5,000 more, Farrell agreed but told Witt that he would put no more into the
 project.  Farrell changed the locks on the house, locking out Witt, when Witt
 failed to complete the house within a promised two week period.  Farrell
 acknowledged that Witt loaned $20,000 to the project, depositing the money into
 the account on June 2, 2005.  However, he testified Witt did not tell him about
 the loan and he thought the remaining money he removed from the account was
 his.  When asked whether he had an issue with Witt's labor charges of $45 an
 hour, Farrell stated he did not, asserting that the parties had a fixed price
 contract.  He further stated he was not concerned with the labor charges
 "in the least bit, not under the agreed contract."  
Following the hearing, the
 referee issued an order concluding Contractor had a valid mechanic's lien,
 Contractor and Farrell did not have a valid contract but one was not needed to
 uphold the mechanic's lien, and that Contractor bestowed a benefit to Farrell
 in the amount of $20,000 and Farrell was unjustly enriched in that amount.  The
 referee further denied an award of attorney's fees and costs to either party. 
 He then ordered Farrell's causes of action against Contractor be dismissed,
 with the exception of Farrell's unjust enrichment claim for labor and
 materials.[3]
Farrell filed a motion for
 reconsideration pursuant to Rule 59(e), SCRCP asserting, among other things,
 because there was no written contract and Contractor failed to present evidence
 of the amount of his overhead, numerous items were nonlienable and could not be
 included in the mechanic's lien.  Included within those items was an alleged
 "minimum of $2,358.00" for labor charges on two of Contractor's
 employees, which Farrell contended was an overcharge by Contractor.  Farrell
 also asserted, while there was no written contract, there was a quasi-contract
 or contract implied at law, and the evidence presented indicated the contract
 provided the cost of repair to the house was not to exceed $100,000. 
 Additionally, Farrell maintained in his 59(e) motion that he was entitled to an
 award for his breach of implied warranty of services in a workmanlike manner
 claim based on evidence of the Contractor's deficiencies in his work on the
 house.
In response, the special
 referee filed a supplemental order addressing the various matters raised by
 Farrell in his 59(e) motion.  In regard to Farrell's argument concerning
 nonlienable labor charges, the referee determined that the testimony of Witt
 showed that part of the hourly basis for his services included overhead and
 profit, and, as such, these amounts were not submitted standing alone and were
 therefore properly lienable.   
As to Farrell's assertion
 regarding a quasi-contract or implied contract, the referee noted that in his
 original order he had determined there was no meeting of the minds with regard
 to the material elements of a contract and therefore awarded Contractor damages
 on its unjust enrichment claim.  The referee then stated, "[Farrell's]
 argument convinces me that this was an error and a decision on the basis of
 implied contract should have been rendered instead," and found the parties
 were in agreement with all of the substantial terms of the proposed
 improvements to the real estate.  The referee noted the only material point of
 disagreement between the parties was that Farrell claimed the cost of the
 repairs and upgrade was not to exceed $100,000, while Witt asserted their
 discussion on the matter included only an estimate of costs between $80,000 and
 $100,000.  He concluded, "[a]fter listening to all of the testimony and
 having a chance to observe the witnesses, I am of the opinion that there was an
 implied contract under which [Contractor] was to improve the house and be
 reimbursed the cost of labor at an agreed rate, plus the cost of materials.  I,
 therefore, reverse my decision on the mechanic's lien and find that
 [Contractor] is entitled to foreclosure on the mechanic's lien on the basis of
 implied contract."  The referee determined he accepted the testimony and
 accounting records of Mrs. Witt regarding the $32,137.53 figure due, with the
 exception of a $5,000.00 deposit, and concluded the amount due Contractor on
 the implied contract was therefore $27,137.53.  Additionally, the referee
 determined Contractor was the prevailing party and was entitled to attorney's
 fees of $9,578.45 and costs of $1,597.80, for a total judgment against Farrell
 in the amount of $38,313.78. 
Finally, as to Farrell's
 argument that he was entitled to an award for Contractor's breach of implied
 warranty of services in a workmanlike manner, the referee agreed Contractor did
 breach this implied warranty.  He therefore "award[ed] damages sustained by
 [Farrell] on the breach of implied warranty cause of action in the amount of
 $7,000."  This appeal follows.
ISSUES
1. Whether the referee's supplemental order failed to properly offset the
 amount of damages awarded Farrell on his breach of warranty claim.
2.  Whether the referee erred in awarding judgment with regard to Witt's
 breach of contract cause of action because (a) the referee did not have the
 power to rule in favor of Witt on his breach of contract claim in the
 supplemental order and (b) the referee's award of judgment on Witt's breach of
 contract claim was not supported by the evidence.
3. Whether the referee erred in awarding judgment with regard to
 Contractor's mechanic's lien cause of action because (a) the referee did not
 have the power to rule in favor of Witt on his mechanic's lien action in the
 supplemental order, (b) the invoices submitted in support of the mechanic's
 lien contained numerous items that were not for the improvement of real estate,
 and (c) the special referee erred in ruling Witt was entitled to reimbursement
 of attorney's fees and costs under the mechanic's lien statute.
STANDARD OF REVIEW
Foreclosure of a mechanic's
 lien is an action at law.  T.W. Morton Builders, Inc. v. von Buedingen,
 316 S.C. 388, 397, 450 S.E.2d 87, 92 (Ct. App. 1994).  An action for breach of
 contract seeking money damages is an action at law.  Roberts v. Gaskins,
 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct. App. 1997).  In an action at law,
 the appellate court will correct any error of law, but must affirm the special
 referee's factual findings unless there is no evidence that reasonably supports
 those findings.  Id.
LAW/ANALYSIS
I.   Offset of Damages
Farrell first contends the
 special referee erred in failing to properly offset the amount of damages awarded
 to him under his counterclaim for breach of implied warranty of services in a
 workmanlike manner.  He notes that, though the referee found he was entitled to
 an award against Contractor in the amount of $7,000, the referee only ordered
 judgment against him in the amount of $38,313.78 in the "Conclusions"
 portion of his supplemental order.  In response to Contractor's assertion that this
 issue is not preserved for appeal, Farrell maintains he did not challenge the
 matter through a second motion because the order was plain on its face in
 awarding him $7,000 and awarding Contractor $38,313.78, and it was only through
 Contractor's interpretation of the order that any error occurred.  Farrell
 maintains that during preparation of this appeal, he learned Contractor's
 position was that Farrell owed the full $38,313.78, without credit for the
 $7,000 awarded to him in the supplemental order.
We find the order is plain on
 its face and grants judgment to Contractor in the amount of $38,313.78, which
 includes $27,137.53 on Contractor's implied contract cause of action along with
 attorney's fees of $9,578.45 and costs of $1,597.80.  The order also clearly
 awards Farrell $7,000 on his breach of implied warranty cause of action.  Therefore,
 there was no error by the referee, and the order is plain on its face that
 Farrell is entitled to an offset of $7,000 against Contractor's award of
 $38,313.78.
II.  Breach of Contract
A.  Power to Rule
Farrell contends the special
 referee did not have the power to rule in favor of Contractor with regard to
 Contractor's breach of contract cause of action because, though Farrell filed a
 motion to alter or amend the original order, Contractor did not file any
 post-trial motions or seek relief from the referee's original order.  He therefore
 contends the issue of Contractor's breach of contract claim was not properly
 before the referee and the referee's reversal of his previous order on
 Contractor's cause of action for breach of contract was beyond the scope of the
 motion before the referee.
This
 issue is not preserved for our review.  Farrell is asserting the supplemental
 order granted relief not presented to the referee.  Because Farrell is
 challenging something that was altered from the original judgment, he was
 required to bring a second motion for reconsideration to present the issue to
 the referee for his consideration.  Since this argument was neither raised to
 nor ruled upon by the referee, it is not preserved for our review.  See Robinson
 v. Robinson, 365 S.C. 583, 585, 619 S.E.2d 425, 426 (2005) (finding a
 second motion for reconsideration is appropriate if it challenges something
 that was altered from the original judgment as a result of the initial motion); I'On, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 422, 526 S.E.2d 716,
 724 (2000) (noting the losing party generally must both present his issues and
 arguments to the lower court and obtain a ruling before an appellate court will
 review those issues and arguments); Van Ness v. Eckerd Corp., 350 S.C.
 399, 403-04, 566 S.E.2d 193, 196 (Ct. App. 2002) (determining, where the trial
 judge recused himself following the filing of a motion to reconsider, the issue
 of propriety of trial judge's recusal was not preserved for review because
 appellant failed to make a Rule 59(e) motion challenging the recusal); In re
 Estate of Timmerman, 331 S.C. 455, 460, 502 S.E.2d 920, 922 (Ct. App. 1998)
 (holding when a party receives an order granting relief not previously
 contemplated or presented to the trial court, the aggrieved party must move,
 pursuant to Rule 59(e), SCRCP, to alter or amend the judgment in order to
 preserve the issue for appeal).
B.  Support of Evidence
Farrell next contends the
 referee erred in awarding Contractor judgment on his breach of contract cause
 of action because the referee's award was not supported by the evidence.  Farrell
 argues the referee's finding that the parties were in agreement with all the
 substantial terms of the proposed improvements to the real estate was a direct
 contradiction of the evidence.  In particular, Farrell asserts the evidence
 shows (1) Contractor never sent any invoices to him until after the mechanic's
 lien was filed, (2) the hourly rates charged to the project were never
 disclosed to him prior to or during the renovations, and (3) the parties
 discussed that the repairs would cost between $80,000 and $100,000.  He
 therefore contends the evidence demonstrates there was no meeting of the minds
 and the award based on breach of contract is unsupported by the evidence.
First, there is evidence of
 record that the reason the invoices were not sent to Farrell was that Farrell
 declined Contractor's offer to fax them to him, instructing Contractor instead
 to keep the invoices in the file.  Contractor then made two copies of each
 invoice so that Farrell would have a copy, and the file was always available to
 Farrell.  As to Contractor's failure to disclose the hourly rates charged to
 the project, Witt stated $45 was his going rate for any customer, and Farrell
 testified he had no issue with Contractor's $45 an hour labor charges and he
 was not concerned "in the least bit" with those charges.  Finally,
 while the parties did discuss the figures of $80,000 to $100,000 for the cost
 of repairs, Witt's testimony is clear that this was not a term of the contract,
 but was only an initial estimate of the costs of the project.  Accordingly, we
 find no merit to Farrell's argument that the award based on breach of contract
 is unsupported by the evidence. [4]
III.  Mechanic's Lien
A. Power to Rule
Farrell contends the original
 order of the special referee did not grant judgment to Contractor on the
 mechanic's lien, but the referee reversed this previous order and awarded
 Contractor relief on the mechanic's lien cause of action.  Farrell asserts, as
 with the breach of contract cause of action, there was no motion before the
 referee that allowed for reconsideration of the referee's original denial of
 the mechanic's lien, and the referee was therefore without the power to rule
 for Contractor on the mechanic's lien cause of action.
Farrell is, again, asserting
 the supplemental order granted relief not presented to the referee.  Because
 Farrell is challenging something that was altered from the original judgment,
 he was required to bring a second motion for reconsideration to present the
 issue to the referee for his consideration.  As with Farrell's argument
 concerning the referee's power to rule in favor of Contractor on its breach of
 contract cause of action, this argument is not preserved for our review.
B.   Inflated Salary Rates
Farrell contends the special
 referee erred in awarding judgment with regards to Contractor's mechanic's lien
 cause of action because the invoices submitted in support of the mechanic's
 lien contained numerous items that were not for the improvement of real
 estate.  He argues that section 29-5-10 et. seq. applies only
 when a person performs work or furnishes material actually used in the
 erection, alteration, or repair of a building or structure, and items filed for
 matters other than improvement of real estate are invalid, unless specifically
 set forth in the contract.  Because lost profits and overhead were not
 specifically included as construction items in the contract, they were not
 lienable and not recoverable items.  Farrell argues it was impossible for the
 special referee to find that the "inflated" salary rates of
 Contractor's employees were an agreed upon term of the contract, and as a
 result, "the mechanic's lien must be greatly reduced."
Section 29-5-10 of the South
 Carolina Code provides in pertinent part as follows:
(a)     A
 person to whom a debt is due for labor performed or furnished or for materials
 furnished and actually used in the erection, alteration, or repair of a
 building or structure upon real estate or the boring and equipping of wells, by
 virtue of an agreement with, or by consent of, the owner of the building or
 structure, or a person having authority from, or rightfully acting for, the
 owner in procuring or furnishing the labor or materials shall have a lien upon
 the building or structure and upon the interest of the owner of the building or
 structure in the lot of land upon which it is situated to secure the payment of
 the debt due to him.
S.C.
 Code Ann. § 29-5-10 (2007).
In Sentry Engineering
 & Construction, Inc. v. Mariner's Cay Devlopment. Corp., 287 S.C. 346,
 338 S.E.2d 631 (1985), our supreme court noted a contractor's mechanic's lien
 may properly include "oversight" and supervisory services, and stated
 the following general rule:
Since
 the statutes provide a lien for labor performed and materials furnished, the
 question arises, particularly where a contractor works under a cost-plus
 contract, whether items which are not direct labor or material costs, such as
 overhead and profit, are lienable.  Such items, as such and standing by themselves,
 are nonlienable, but they become lienable when they are included in a contract
 price or are reflected in the reasonable value of labor or materials
 furnished.  Thus, the cost or value of labor for which a lien may be
 claimed is not necessarily confined to the actual wages paid by the employer to
 the employee actually performing the labor.  It may also include costs and
 expenses of operation in addition to direct wages paid.  
Id. at 352, 338 S.E.2d at 634-35 (quoting 53 Am. Jur. 2d Mechanic's
 Liens, § 107 (1970)) (emphasis added).  Thus, the court determined overhead
 and profit, when stated as part of the contract price, are proper components of
 a mechanic's lien.  Id. at 352, 338 S.E.2d at 635.
In Zepsa Construction, Inc.
 v. Randazzo, 357 S.C. 32, 38, 591 S.E.2d 29, 32 (Ct. App. 2004), this court
 determined the builder of a restaurant, which was only partially completed, was
 not entitled to his overhead and lost profits as part of a mechanic's lien
 claim, finding Sentry inapplicable for several reasons, including that
 the parties' agreement did not include a provision for overhead and profit, and
 the fact that construction in Sentry was substantially completed,
 whereas only $10,000 of the $610,000 Zepsa project had been completed. 
 In doing so, this court stated as follows:
Based
 on our reading of Sentry, we believe the Supreme Court expanded the
 items that are recoverable under the mechanic's lien statute to include
 overhead and profit.  However, this holding is only available in the limited situation
 where the terms of overhead and profit are agreed upon by the parties and are
 subsequently embodied within a contract.
Id. at 37-38, 591 S.E.2d at 31-32.
Here, the evidence supports a
 finding that the overhead and profit were reflected in the reasonable
 value of labor furnished.  The amount Contractor charged for labor was that
 which was charged for all customers, and was included within the costs of
 providing labor.  It was not the overhead and profit for the entire job to be
 performed by Contractor, as it was in Zepsa.[5] 
 Further, the job here, as in Sentry, was substantially completed.  More
 importantly, Farrell specifically indicated he had no problem with the amount
 charged for labor on the job.  He merely disputed that the parties had a time
 and materials contract, but instead insisted the parties agreed to a fixed
 price contract.  The special referee resolved this issue in favor of
 Contractor.  Accordingly, there was evidence to support the referee's inclusion
 of the invoices for labor charges.
C.   Attorney's Fees
 and Costs
Finally, Farrell contends the
 special referee failed to properly award attorney's fees and costs to him as
 the prevailing party in his original order, and then compounded the error by
 reversing his original ruling and then awarding fees and costs to Contractor in
 his supplemental order.  He asserts, in the event this court finds the referee
 erred in reversing its decision on the mechanic's lien, he is entitled to
 reimbursement for attorney's fees and costs, as he would then be the prevailing
 party.  Alternatively, he argues should this court find the referee did have
 the power to reverse himself on the mechanic's lien, but that such lien should
 be reduced because of the improper inclusion of overhead and profit, the matter
 should be remanded for a new determination as to the prevailing party.
Farrell's argument in this
 regard is wholly dependent on this court's reversal of the special referee. 
 Because we find Farrell is not entitled to reversal of these issues, we affirm
 the attorney's fees and costs.
CONCLUSION
For the foregoing reasons,
 the special referee's order granting judgment to Contractor in the amount of
 $38,313.78, offset by Farrell's award of $7,000, is 
AFFIRMED.
HUFF, SHORT, and PIEPER,
 JJ., concur.

[1] We decide this case without
 oral argument pursuant to Rule 215, SCACR.
[2] Although the record indicates the home was
 actually sold before this hearing was held, the record before the court does
 not reflect if it was sold for a profit and, if so, how much profit.  If it was
 sold for a profit, there is no indication Witt actually shared in any of the
 profit.
[3] In determining no valid contract existed between the
 parties, the special referee found Contractor and Farrell did not have a
 meeting of the minds as to a contract for the renovations and repairs, as the
 parties did not mutually agree and assent to the terms of a contract.  Further,
 it appears the referee's refusal to dismiss Farrell's counterclaim for unjust
 enrichment was based upon his finding that Contractor failed to pay Farrell for
 the labor and materials resulting from Contractor's deficiencies and incomplete
 work on the subject property.  However, the referee did not grant Farrell any
 sort of judgment or offset for Farrell's unjust enrichment claim in his initial
 order. 
[4] It should be noted, although Farrell asserted in his
 motion for reconsideration that there existed a quasi-contract or contract
 implied at law, the referee implicitly determined there existed a contract
 implied in fact, citing law for implied in fact contracts.  Express contracts
 and contracts implied in fact are law actions, with the measure of damages
 being determined by the parties' agreement, while quasi-contracts and contracts
 implied by law are actions in equity for which the measure of the recovery is
 the extent of the duty or obligation imposed by law, and is expressed by the
 amount which the court considers the defendant has been unjustly enriched at
 the expense of the plaintiff.  Myrtle Beach Hosp., Inc. v. City of Myrtle
 Beach, 341 S.C. 1, 8, 532 S.E.2d 868, 872 (2000).  A contract "implied
 in fact" arises when the assent of the parties is manifested by conduct,
 not words.  Stanley Smith & Sons v. Limestone Coll., 283 S.C. 430,
 434 n.1, 322 S.E.2d 474, 478 n.1 (Ct. App. 1984).  A quasi-contract or contract
 implied in law, on the other hand, is no contract at all, but an obligation
 created by the law in the absence of any agreement between the parties.  Id. 
 Farrell does not appeal the referee's implicit finding of an implied in fact
 (legal) contract as opposed to an implied at law (equitable) contract. 
[5] Indeed, Contractor's position was that the contract between
 the parties, aside from charges for time and material, provided that Contractor
 was also entitled to share in any profits from the sale of the home.  Such, if
 any existed, however, was clearly not awarded to Contractor.